# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| Aaron Riffle<br>*Individually and on behalf of all others similarly situated* | Case No. 2:19-cv-04750-SDM-CMV |
| Plaintiffs, | JUDGE SARAH D. MORRISON |
| *v.* | MAGISTRATE JUDGE CHELSEY M. VASCURA |
| Cristy's Pizza, Inc. et. al.<br>Defendants. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND EXPENSES

Douglas M. Werman
**WERMAN SALAS P.C.**
dwerman@flsalaw.com
77 West Washington St., Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008

Michael L. Fradin, Esq.
**LAW OFFICE OF MICHAEL L. FRADIN**
mike@fradinlaw.com
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: (847)986-5889

*Counsel for Plaintiff and Potential Opt-in Plaintiffs*

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................ 2

III.    OVERVIEW OF THE SETTLEMENT ............................................................... 3

      A.      Settlement Fund ................................................................................... 3

      B.      Participating Plaintiffs, Allocation Formula, and Tax Treatment ................. 3

      C.      Release of Claims for Participating Plaintiffs ..................................... 6

      D.      Incentive Award and Release of Claims for Those Receiving Them .............. 7

      E.      Settlement Administration ................................................................... 7

      F.      Plaintiff's Attorneys' Fees and Litigation Expenses ............................ 7

IV.    ONE-STEP APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................ 7

V.     THE COURT SHOULD APPROVE THE FLSA SETTLEMENT ........................... 8

      A.      The Proposed Settlement Is the Product of Contested Litigation ................. 9

      B.      The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties ................................................... 9

            1.      Bona Fide Dispute Between the Parties Over Liability ................. 9

            2.      The Proposed Settlement Is Fair and Reasonable ............................... 10

                  a.      The Settlement was Fairly and Honestly Negotiated ............... 11

                  b.      The Ultimate Outcome of the Ligation was Unknown ........... 11

                  c.      The Value of the Settlement is Significant ............................... 12

                  d.      Plaintiff's Attorneys and Named Plaintiff Support the Settlement ............................................................................... 13

VI.    THE REQUESTED SERVICE AWARD SHOULD BE APPROVED ..................... 14

VII.   PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES AND LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ..................... 15

      A.      Plaintiff's Requested Attorneys' Fees in the Amount of $68,333.33 are Reasonable ................................................................................... 15

            1.      Value of the Benefit Provided ..................................................... 16

       2.       **Society's Interest in Rewarding Attorneys** ............................................ **17**

       3.       **Whether Services Were Undertaken on Contingent-Fee Basis** .......... **17**

       4.       **Value of Services Rendered on an Hourly Basis** ................................. **18**

       5.       **Complexity of the Litigation** .................................................................. **20**

       6.       **Professional Skill and Standing of Counsel** ......................................... **21**

   **B.**       **Plaintiff's Litigation Expenses Should Be Approved** ....................................... **21**

**VIII.**   **THE COURT SHOULD APPOINT A SETTLEMENT ADMINISTRATOR AND APPROVE ITS FEE** ............................................................................................................ **22**

**IX.**     **CONCLUSION** ................................................................................................................ **22**

## I.     INTRODUCTION

Plaintiff respectfully moves this Honorable Court to review Plaintiff's Settlement Agreement (the "Settlement") and to enter an Order approving the Settlement as fair and reasonable.

The proposed settlement will resolve bona fide disputes involving minimum wage and overtime compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as parallel state wage-and-hour law. Plaintiff asserted that Defendants unlawfully failed to pay its pizza pros, wait staff, and delivery drivers, including Plaintiff, minimum wage for all hours worked.  Specifically, Plaintiff alleged that deductions from non-exempt employees' wages resulted in Plaintiff and allegedly similarly situated employees being paid at a rate that fell below the state and federal minimum wage rate.

Plaintiff respectfully submits that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel, and reached on after a full-day mediation with a well-respected mediator, Michael Ungar.

Pursuant to Local Rule 7.2(a)(3), the Plaintiff provides this succinct, clear, and accurate summary of the Motion, as it exceeds twenty pages.  The Motion starts with a summary of the factual and procedural background of this case. See Part II, below.  Part III of the Motion provides an overview of the settlement, including a detailed description of the how the settlement fund will be distributed.   Part IV of the Motion describes the one-step approach to settlement under the FLSA, including citations to other cases where, as here, there are no accompanying Rule 23 classes in the settlement.

Part V describes the applicable standard for approval of a settlement under the FLSA. A Court must determine whether the settlement was reached as a result of contested litigation

and whether it is a fair and reasonable resolution of a bona fide dispute. Part V(A) addresses why this litigation was contested. Part V(B) addresses why the dispute reflects a fair and reasonable resolution of a bona fide dispute between the parties.

Part VI describes the service award contemplated in the Settlement and justifies this award in light of the services provided by Named Plaintiff Riffle in this suit. Part VII describes Plaintiff's Counsel's request for attorney's fees and litigation costs. This section discusses the general practice in Ohio of awarding one-third of the fund in an FLSA settlement. Finally, Part VIII describes Plaintiff's request appointment of a settlement administrator and approval of the costs of such an administrator. The Parties' Settlement Agreement is attached hereto as Exhibit 1. Plaintiff requests the Court enter the Approval Order attached as Attachment A to the Settlement Agreement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This is a wage case by non-exempt employees of restaurants operated by Defendants in Ohio. Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act ("MFWFSA"), and the Ohio Constitution by failing to pay Plaintiffs and other employees in accordance with federal and state minimum wage laws. ECF No. 1, Compl. ¶ 3. Defendants deny these allegations. The Potential Opt-In Plaintiffs are all current and former non-exempt employees of Cristy's Pizza, employed by Cristy's Pizza for at least one week during the three-year period prior to the filing of this action to the present, from whom an allegedly improper deduction was taken, or who worked overtime in a week in which they also worked in a tipped position ("Potential Opt-in Plaintiffs"). On June 30, 2020, the Parties participated in a mediation with a neutral mediator (Michael Ungar of Ulmer & Berne LLP) and were able to reach a settlement. Ex. 2, Fradin Decl. ¶ 21.

III.    **OVERVIEW OF THE SETTLEMENT**

    A.    **Settlement Fund**

Defendants have agreed to pay $205,000.00 ("Maximum Gross Settlement Amount") to settle the claims in this Civil Action, which shall be used to provide for: (1) Settlement Payments to Participating Plaintiffs, (2) Service Awards, (3) Plaintiff's Attorneys' Fees; (4) Plaintiff's Litigation Expenses; and (5) Costs of Administration. Separately, Defendants will pay the mediation costs as well as the employer's share of payroll taxes on the portion of Settlement Payments allocated to unpaid wages.

    B.    **Participating Plaintiffs, Allocation Formula, and Tax Treatment**

Participating Plaintiffs are Plaintiff and Potential Opt-in Plaintiffs who worked for Defendants for the time period between October 30, 2016 through July 1, 2020 and who elect to participate in the Settlement. Payments to Participating Plaintiffs will be paid from the Net Settlement Fund, which is the $205,000 Maximum Gross Settlement Amount minus Service Awards, Plaintiffs' Attorneys' Fees and Litigation Expenses, and Costs of Administration. *Id.*  Settlement Payments to Participating Plaintiffs will be allocated from the Net Settlement Fund based employees' actual hours worked and rates of pay with the following formula and distributed *pro rata*:

1.    For each pay period that Named Plaintiff and each Potential Opt-in Plaintiff worked during the Relevant Period and that Defendant took a deduction for cash shortages, uniforms, shoes, or miscellaneous, Plaintiff computed the Named Plaintiff or Potential Opt-in Plaintiff's Actual Rate of Pay.

2.    The Actual Rate of Pay is the sum of wages paid in each type of job (tipped or non-tipped) minus any deductions taken for the pay period divided by the number of hours that the individual was paid for working in the same type of job.

3

3.    For pay periods in which the Actual Rate of Pay was less than the applicable minimum wage for non-tipped jobs or less than the applicable tip credit rate for tipped jobs, Plaintiff multiplied the difference between the Applicable Minimum Wage and the Actual Rate of Pay by the number of hours the individual worked in each type of job in the pay period. The result is Alleged Owed Minimum Wages for the pay period.

4.    For pay periods in which the deductions did not result in an alleged minimum wage underpayment, the individual's sum of all deductions taken is allotted to Alleged Owed Deductions.

5.    For pay periods in which the deductions did result in an alleged minimum wage underpayment and the Alleged Owed Minimum Wages is less than the total deductions taken, Plaintiff allotted the difference to Alleged Owed Deductions.

6.    For Potential Opt-in Plaintiffs who worked overtime hours in a tipped position during the Relevant Time Period, Plaintiff computed the Average Tip Credit Taken.

7.    The Overtime Rate was calculated by subtracting the Average Tip Credit Taken from one-and-one half times the Applicable Minimum Wage.

8.    Plaintiff multiplied the difference between the Overtime Rate and the Average OT Rate Paid by the number of hours worked in each tipped position to compute Alleged Owed Overtime Wages.

9.    The sum of Named Plaintiff or Potential Opt-in Plaintiff's Alleged Owed Minimum Wages, Alleged Owed Deductions, and Alleged Owed Overtime

Wages is the Named Plaintiff or the Potential Opt-in Plaintiff's Alleged Total Owed Wages.

10. Named Plaintiff's and each Potential Opt-in Plaintiff's Pro Rata Factor of the Net Settlement Fund was determined by dividing his or her Alleged Total Owed Wages by the sum of the Alleged Total Owed Wages computed for the Named Plaintiff and all Potential Opt-in Plaintiffs. Named Plaintiff's and each Potential Opt-in Plaintiff's Preliminary Settlement Award will be determined by multiplying the Net Settlement Fund by his or her respective Pro Rata Factor.

11. All Potential Opt-in Plaintiffs shall be eligible to receive a minimum Settlement Payment of $20.00 ("Minimum Settlement Payment").

   a. If a Potential Opt-in Plaintiff's Preliminary Settlement Award is less than $20.00, the Potential Opt-in Plaintiff's Settlement Payment will be increased to the Minimum Settlement Payment of $20.00.

   b. All Minimum Settlement Payments shall be subtracted from the Net Settlement Fund, which shall yield the "Adjusted Net Settlement Fund." Each Potential Opt-in Plaintiff whose Preliminary Settlement Award exceeds $20.00 will have his or her Pro Rata Factor recalculated, omitting data from all Minimum Settlement Payment recipients. Their Alleged Total Owed Wages shall be divided by the sum of all Potential Opt-in Plaintiffs' Alleged Total Owed Wages whose Preliminary Settlement Award exceeds $20.00. The quotient will be referred to as the "Adjusted Pro Rata Factor." The Settlement Payment for each Potential Opt-in Plaintiff whose Preliminary Settlement Award exceeds $20.00 shall be computed by multiplying his or her Adjusted

5

Pro Rata Factor by the Adjusted Net Settlement Fund. If, after the computations described in this paragraph are performed, any Potential Opt-in Plaintiff's Settlement Payment is less than $20.00, the calculations described in this Section will be repeated so that each Potential Opt-in Plaintiff is eligible to receive a minimum Settlement Payment of $20.00.

The minimum Settlement Payment for any Participating Plaintiff is $20.00. Forty percent of each Settlement Payment will be allocated to unpaid wages, with payroll taxes withheld, and sixty percent will be allocated to liquidated damages, not subject to tax withholdings.

### C.     Release of Claims for Participating Plaintiffs

Potential Opt-in Plaintiffs who choose to participate in the Settlement by timely endorsing, signing and/or cashing their Settlement Payment checks will release their minimum wage and overtime claims as set forth in the Settlement Agreement. The Settlement Notices that Potential Opt-in Plaintiffs receive with their Settlement Payment and the back of each check will contain the following language:

*CONSENT TO JOIN AND RELEASE OF CLAIMS:*

***By endorsing, signing and/or cashing this check, I consent to join the Fair Labor Standards Act claims in the case Riffle v. Cristy's Pizza, Inc., et al., No. 2:19-cv-4750, pending in the United States District Court for the Southern District of Ohio, and I agree to be bound by the Settlement Agreement and release in that case. I agree that I have read the Notice that came with this check, and understand that by endorsing, signing and/or cashing this check, I am waiving and releasing my right to pursue certain wage and hour claims against the Defendants in that case.***

Potential Opt-in Plaintiffs who do not timely endorse, sign and and/or cash their Settlement Payment checks will not release any claims. Settlement Payment checks are valid for 150 days from mailing. Any uncashed Settlement Payments that remain after the 150-day check cashing period will revert back to Defendants.

6

### D. Incentive Award and Release of Claims for Those Receiving Them

The Settlement provides for an Incentive Award of $5,000 to the Named Plaintiff for his work in prosecuting this action and recovering money on behalf of all Participating Plaintiffs, including conferring with Plaintiffs' Counsel, filing this Civil Action in his own name, and preparing for mediation.

### E. Settlement Administration

The Settlement provides for appointment of a third party to administer the settlement. The Settlement Administrator will establish a Qualified Settlement Fund, handle tax withholding and reporting, mail Settlement Payment checks and Settlement Notices, and update addresses and re-mail undeliverable Settlement Payments and Notices. *Id.* at §§ 1(l), 4(b)(iv). The Settlement Administrator will receive approximately $7,500 from the Settlement Fund for its fees in administering the Settlement.

### F. Plaintiff's Attorneys' Fees and Litigation Expenses

The Settlement provides that Plaintiff's Counsel may request one-third of the $205,000.00 Settlement ($68,333.33) as reasonable attorneys' fees. Plaintiff's Counsel may also request reimbursement of $2,000.00 in actual litigation expenses, including filing fees, pro hac vice fees, postage, travel expenses, legal research, and copying costs

## IV. ONE-STEP APPROVAL OF THE SETTLEMENT IS APPROPRIATE

Collective actions under the FLSA are fundamentally different than class actions under Rule 23. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). The due process concerns in Rule 23 class action settlements are not present in collective actions brought under the FLSA, because FLSA collective action members must affirmatively join the lawsuit by opting-in, instead of opting-out, to be bound by decisions of the Court. *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982). Thus, courts do not

apply the exacting preliminary and final approval standards of a class action settlement under Rule 23 to FLSA settlements. *See, e.g., Beckman v. KeyBank*, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013). Instead, courts regularly apply a one-step approach to determine whether an FLSA settlement should be approved when, as here, there are no accompanying Rule 23 classes in the settlement. *See, e.g., Cooper v. Winking Lizard, Inc.*, Case 2017 WL 4465759, at *1 (N.D. Ohio Oct. 4, 2017) (approving FLSA collective action settlement in one step).[1] The Court should follow these cases and approve this Settlement in one step.

## V. THE COURT SHOULD APPROVE THE FLSA SETTLEMENT

Where the litigation arises from a private enforcement action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), the standard for approval of a settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945); "The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligation under the FLSA." *Filby v. Windsor Mold USA, Inc.,* 2015 WL 1119732, at *2 (N.D. Ohio March 11, 2015).

The Court, therefore, should perform two inquiries before approving an FLSA settlement. First, the Court must be satisfied that the settlement was the product of

---

[1]     *See also Salinas v. U.S. Xpress Enterprises, Inc.*, 2018 WL 1477127, at *11 (E.D. Tenn. Mar. 8, 2018) (same), *report and recommendation adopted*, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018); *Knox v. Jones Grp.* 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2017) (same); *Furman v. At Home Stores LLC*, No. 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017) (same); *Briggs v. PNC Financial Services Group, Inc.*, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) (same); *Castillo v. Noodles & Co.*, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016) (same); *Prena v. BMO Fin. Corp.*, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (same).

"contested litigation." Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the Parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicium of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

### A.     The Proposed Settlement Is the Product of Contested Litigation

The Settlement is a result of contested litigation given the fact that the Settlement has been reached in the context of this Civil Action. The lawsuit was resolved only after the Parties engaged in informal discovery and document production and participated in a full day mediation session with well-respected mediator, Michael N. Ungar. In this context, the Parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. Ex. 2, Fradin Decl. ¶ 22.  And "the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *See Hainey v. Parrot,* 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007).

### B.     The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties

The second prong of the Court's settlement approval inquiry focuses on two issues: (1) confirming the existence of a *bona fide* dispute between the Parties and (2) reviewing the fairness and reasonableness of the proposed settlement. Both issues are satisfied.

#### 1.     *Bona Fide Dispute Between the Parties Over Liability*

Plaintiff alleged that Defendants violated the FLSA by requiring him and similarly situated employees to pay for uniforms and cash shortages. Defendants denied Plaintiff's

9

allegations, denied Plaintiff's calculation of wages that should have been properly paid, and denied that Plaintiff is entitled to damages. Defendants further argued that, if class members were entitled to any damages, it would be limited to the amount of any deduction rather than a forfeiture of the tip-credit. Given a recent South Carolina District Court decision, the outcome of this particular dispute is far from certain. *See Sellers v. Keller Unlimited LLC*, No. 2:17-cv-2758-RMG, 2019 U.S. Dist. LEXIS 194044, at *11-12 (D.S.C. Nov. 6, 2019) (holding that the measure of damages is return of improper deduction, not loss of entire tip credit).

The Parties also disputed whether collective treatment of Plaintiff's FLSA claims were appropriate. If the matter was not resolved by settlement, there was a risk that Plaintiff would not have succeeded in moving for collective treatment of his claims. *See Langlands v. JK & T Wings, Inc.*, 2016 WL 4073548, at *5 (E.D. Mich. Aug. 1, 2016) (denying request to authorize notice to collective action members). And even if Plaintiff obtained the right to proceed collectively, individualized differences may have arisen during discovery that required decertification. *See White v. 14051 Manchester Inc.*, 301 F.R.D. 368, 379 (E.D. Mo. 2014) (decertifying FLSA tip-credit claims against restaurant chain).

For settlement purposes, only, the Parties agree that the Named Plaintiff is similarly situated to Potential Opt-In Plaintiffs in terms of compensation and job duties. But Defendants retain all defenses to collective treatment of Plaintiff's claims if the Court does not approve this Settlement.

### 2. *The Proposed Settlement Is Fair and Reasonable*

In determining whether an FLSA Settlement is fair and reasonable, courts generally examine four factors: (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome in doubt; (3) whether the value of immediate settlement outweighs the mere possibility of

10

future relief after protracted litigation; and (4) whether, in the judgment of the parties, the settlement is fair and reasonable. *Cannon v. Time Warner NY Cable LLC*, 2015 WL 4498808 (D. Colo. July 24, 2015). Each of these factors is satisfied.

### a. The Settlement was Fairly and Honestly Negotiated

The Parties were only able to reach a Settlement after participating in a full day mediation session with a neutral mediator. In this context, there is a presumption that the Settlement was fairly and honestly negotiated. *Lewis v. Huntington Nat'l Bank*, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (Marbley, J.); *see also Hainey*, 617 F. Supp. 2d at 673. In addition, because Defendants produced time and pay records for settlement members before the mediation, the Parties were able to negotiate as equals, with full knowledge of the value of the claims. Ex. 3, Werman Decl. ¶ 16.

### b. The Ultimate Outcome of the Ligation was Unknown

As outlined above, the Parties disagree about the merits of Plaintiff's claims and the viability of Defendants' various defenses. If the litigation continued, Plaintiff would have faced obstacles and uncertainties, including extensive discovery and the outcome of a motions to authorize notice, for decertification, summary judgment, and potentially a trial. *See, e.g., Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (recognizing that, absent settlement, wage and hour plaintiffs "would have had to show, through testimony and documentary evidence, the specific hours, times, and dates worked—a process requiring extensive and expensive additional discovery"); *Cornell v. World Wide Business Servs. Corp.*, 2015 WL 6662919, at *2 (S.D. Ohio Nov. 2, 2015) (decertifying collective because of "disparate factual and employment settings" of the individual opt-in plaintiffs); *Schaefer v. Walker Bros. Enterprises*, 829 F.3d

11

551, 555 (7th Cir. 2016) (affirming summary judgment to restaurants in case asserting non-tipped work claims).

Even if Plaintiff ultimately prevailed on the issue of liability, Plaintiff would need to prove the amount of damages. With regard to damages, Plaintiff contends that when an employer prevents an employee from retaining all of their tips by requiring an employee to pay for customer walkouts, a full forfeiture of the tip credit is the appropriate remedy. *See, e.g., Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008); *Vance v. Ala Carte Entm't, Inc.*, No. 01 C 5817, 2003 WL 24311811, at *2 (N.D. Ill. Apr. 14, 2003). By contrast, Defendants could rely on the South Carolina District Court opinion discussed supra and other cases suggesting that minimum wage violations are determined on a shift by shift or workweek by workweek basis. *See also* 29 U.S.C. 206(a)(1); *Morgan v. Speak Easy, LLC*, 625 F.Supp.2d 632, 645 (N.D. Ill. 2007). The same damages arguments would apply to Plaintiff's uniform deduction claims. The resolution of these issues alone would have resulted in a wide swing in the damages amount.

### c. The Value of the Settlement is Significant

The benefit that Participating Plaintiffs will receive from the Settlement as against the maximum they could have received if they had prevailed at trial is fair and reasonable. The Settlement Payments range from a minimum payment of $20 to a maximum payment of $4,169.34. Ex. 2, Werman Decl. ¶ 18. The total $205,000.00 settlement represents $312.98 per Plaintiff (including Named Plaintiff and all Potential Opt-In Plaintiffs). The $205,000.00 settlement represents the recovery of over 150% of the alleged wages owed to Plaintiffs, which is an excellent result. *Dillworth*, 2010 WL 776933, at *8 (finding that a recovery of one-third of the owed wages for class members, before deducting attorney's fees and costs, is "well above" average); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834

12

F.2d 677, 682 (7th Cir.1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).[2] And because an individual must affirmatively cash his or her check to participate in the Settlement, as is clearly explained in the proposed Settlement Notice, any Potential Opt-In Plaintiffs that are unhappy with their payments can decline to participate and avoid releasing any claims.

### d. Plaintiff's Attorneys and Named Plaintiff Support the Settlement

Plaintiff's Counsel has comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement. Ex. 2, Fradin Decl. ¶ 23.  Plaintiff's Counsel believe the Settlement is fair and reasonable. *Id.* This factor supports approval of the Settlement. Courts should generally "defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs," *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983), especially when the case has been developed through discovery. *See In re Broadwing, Inc. ERISA Litig.,* 252 F.R.D. 369, 375 (S.D. Ohio 2006).

Additionally, the Named Plaintiff was available by phone during the mediation and

---

[2]     *See also Lazy Oil Co. v. Witco,* 95 F.Supp.2d 290, 339 (W.D. Pa.1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

was involved throughout the mediation process and approved the terms of the Settlement. Ex. 2, Fradin Decl. ¶ 17.  In light of the foregoing, the Court should approve the Parties' proposed Settlement of this Civil Action.

## VI.     THE REQUESTED SERVICE AWARD SHOULD BE APPROVED

The Settlement Agreement contemplates providing a $5,000 Service Award to the Named Plaintiff to acknowledge his time and effort expended in helping to achieve a successful Settlement. Courts may make separate awards to class representatives in recognition of their risks taken, time expended, and benefits to the collective. *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003); *accord Dillworth,* 2010 WL 776933, at *7.

The Named Plaintiff provided extensive factual information to Plaintiff's Counsel and engaged in numerous and extensive calls and communications with Plaintiff's Counsel. Ex. 2, Fradin Decl. ¶ 18. And the requested payment is proportional to service payments recently awarded to Plaintiffs in other FLSA actions. *See Castillo v. Morales, Inc.*, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) (awarding $8,000 service payment to class representative in wage and hour case); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (awarding $10,000 service payments to two class representatives in wage and hour case); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).[3]

---

[3]      *See also*, *Koszyk v. Country Fin.*, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action).

## VII. PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES AND LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

### A. Plaintiff's Requested Attorneys' Fees in the Amount of $68,333.33 are Reasonable

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.,* 436 F. App' 496, 498 (6th Cir. 2011). The Court has the discretion to use either the lodestar method or a percentage of the common fund to award reasonable attorney fees. *Castillo v. Morales, Inc.*, 2015 WL 13021899, at *6 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) (citing *See Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993)). "In the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) (quotations and citation omitted). Here, Plaintiff requests that the Court use the percentage method and award them one-third of the settlement fund.

Courts in this district readily approve the percentage-of-the-fund method and award similar fees to those requested here, including in wage and hour cases. *Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (awarding 52 percent of maximum settlement fund to counsel in wage and hour case); *Swigart,* 2014 WL 3447947, at *6 (awarding 33 percent of $4 million settlement fund in wage and hour case); *see also Moore v. Aerotek, Inc.*, 2017 WL 2838148, at *6 (S.D. Ohio June 30, 2017), *report and recommendation adopted,* No. 2017 WL 3142403 (S.D. Ohio July 25, 2017) ("Fee awards in

15

common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created."); *Kimber*, 2017 WL 5247538, at *5-*6 (awarding one-third of $450,000 fund).

To assist the Court in determining whether the requested fee is reasonable, the Sixth Circuit has identified the following factors: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Castillo*, 2015 WL 13021899, at *6 (citing, among others, *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974)). Each of these factors weighs strongly in favor of the reasonableness of the requested fee.

### 1.     *Value of the Benefit Provided*

Under this Settlement, all Participating Plaintiffs will receive direct cash payments representing a substantial recovery on their wage claims. There is no initial claims process that can decrease participation in the settlement. *See Castillo*, 2015 WL 13021899, at *6 (noting, with concern, that the claims process in wage and hour settlement resulted in only 14 percent of eligible participants opting into the settlement). "Further, the settlement provides relatively early relief to [collective action] members, and it eliminates the additional risks the parties would otherwise bear if this litigation were to continue. Absent settlement, the parties would have engaged in discovery from individual opt-in plaintiffs, of electronically-stored information, and a potential motion to decertify the collective, and dispositive motions on merits and damages issues." *Swigart,* 2014 WL 3447947, at *6. Instead of the risks of continued litigation, the gross Settlement provides Plaintiffs with over

16

150% of their alleged owed minimum wages and overtime wages, which is well above the average recovery in FLSA lawsuits. *Dillworth*, 2010 WL 776933, at *8 (finding that a recovery of one-third of the owed wages for class members, before deducting attorney's fees and costs, is "well above" average).

### 2. *Society's Interest in Rewarding Attorneys*

There is no doubt that "society certainly has an interest in incentivizing attorneys to assist in combatting illegal nonpayment of wages." *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994)). Plaintiff's Counsel took on this matter to protect the rights of low-wage employees and litigated for nearly a year against experienced defense counsel. This factor supports awarding the requested fees to encourage qualified attorneys to fight for workers' unpaid wages.

### 3. *Whether Services Were Undertaken on Contingent-Fee Basis*

Plaintiff's Counsel undertook the representation on a purely contingent basis. Ex. 2, Fradin Decl. ¶ 7. Thus, Counsel has borne all of the risk that accompanies contingent-fee representation, including the prospect that the investment of substantial attorney time and resources would be lost. *Id.* Counsel should be compensated for this risk. *Lonardo v. Travelers Indem. Co.,* 706 F. Supp. 2d 766, 796 (N.D. Ohio 2010); *see also Crosby v. Bowarter Inc. Ret. Plan,* 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the higher fee"). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank,* 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011).

### 4. *Value of Services Rendered on an Hourly Basis*

For purposes of determining a reasonable attorneys' fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 896, 895 (1984). Generally, the "prevailing market rate [is] defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir.2004) (citing *Adcock–Ladd v. Secretary of Treasury,* 227 F.3d 343, 350 (6th Cir. 2000)). There is, however, an exception to the general rule that the prevailing market rates of the local community govern the lodestar analysis, and, in this circuit, the exception is known as the "out-of-town specialist." *See Hadix,* 65 F.3d at 535 (citation omitted); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983) ("District courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases."). Attorneys who specialize in particular fields tend to charge more for their services and tend to be found in larger cities where the cost of litigation is more expensive. *See Chrapliwy,* 670 F.2d at 769 (emphasis added). When fees are sought for an "out-of-town specialist," "courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix,* 65 F.3d at 535, citing *Chrapliwy,* 670 F.2d at 768–69.

Here it was reasonable for Plaintiff to retain counsel from outside of the local community and to retain Werman Salas P.C. "Plaintiffs' Counsel are known and recognized lawyers in wage and hour litigation, and have an excellent national reputation in representing tipped employees in this type of case." *Osman, et al. v. Grube, Inc*., et al. No.

316CV00802JJHCOMPLEX, 2018 WL 2095172, at *4 (N.D. Ohio May 4, 2018).[4] *Knox v. Jones Grp.*, No. 15-CV-1738 SEB-TAB, 2017 WL 3834929, at *5 (S.D. Ind. Aug. 31, 2017) (describing Werman Salas P.C. "as national leaders in advocating the rights of working people in wage and hour litigation."); *Sanchez v. Roka Akor Chicago LLC*, No. 14 C 4645, 2017 WL 1425837, at *5-7 (N.D. Ill., Apr. 20, 2017) (same); *Mouloki v. Epee,* No. 14 C 5532, 2017 WL 2791215, at * 3, n. 4, (N.D. Ill. June 27, 2017) (describing Douglas M. Werman as a "highly respected and experienced lawyer[]" in "wage and hour cases."); *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 328 n.5 (N.D. Ill. 2010) (Castillo, J.) (recognizing Mr. Werman as a "highly experienced attorney" in wage and hour class actions); Ex. 3, Werman Decl. ¶ 7.

Here, to date, Plaintiff's Counsel's total lodestar fees are $78,826.17. Ex. 3, Werman Decl. ¶ 22; Ex. 2, Fradin Decl. ¶ 14. The following table shows the breakdown of attorneys and paralegals who worked on this case, the amount of time recorded by each individual, and each individual's hourly rate.

---

[4]     See, e.g., *Driver v. AppleIllinois, LLC*, No. 06-cv-6149 (N.D. Ill.); *Schaefer v. Walker Bros. Enter. Inc.*; *Romero v. Top-Tier Colorado, LLC*, No. 16-1057 (10th Cir.); *Fast v. Applebee's Inter. Inc.*, Nos. 10–1725, 10–1726 (8th Cir.); *Cope v. Let's Eat Out, Inc.*, No. 6:16-cv-03050 (W.D. Mo.); *McLamb v. High 5 Hospitality*, No. 16-0039 GMS (D. Del.); *Greenwell v. R. Wings R. Wild, LLC*, No. 4:15-cv-00742-DPM (E.D. Ark.); *Barnhart v. Chesapeake Bay Seafood House Assoc., LLC*, No. JFM-16-01277 (D. Md.); *Stokes v. Consolidated Wings Investment, LLC*, No. 1:15-cv-01932-RLY-DKL (S.D. Ind.); *Roy v. JK&T Wings, Inc.*, No. 4:16-cv-10836-TSH (D. Mass.); *Knox v. The Jones Group*, No. 15-cv-1738 SEB-TAB (S.D. Ind.); *Ide v. Neighborhood Rest. Partners, LLC,* No. 1:13-cv-00509-MHC (N.D. Ga.); *Robbins v. Blazin Wings, Inc.*, No. 15-06340 (W.D.N.Y.); *Grosscup v. KPW Mgmt., Inc.*, No. 16-cv-6501 (N.D. Ill.); *Soto v. Wings R' Us Romeoville, Inc.*, No. 15-cv-10127 (N.D. Ill.); *Black v. P.F. Chang's China Bistro, Inc.*, No. 16-cv-3958 (N.D. Ill.); *Johnson v. Pinstripes, Inc.*, No. 12 C 1018 (N.D. Ill.); *Cureless v. Great Am. Real Food Fast, Inc.*, No. 3:10–cv–00279–JPG–SCW (S.D. Ill.); *Clark v. Honey Jam Café, LLC*, No. 11 C 3842 (N.D. Ill.); *Cooper v Winking Lizard, Inc.*, 1:16-cv-01513-DAP (N.D. Ohio).

| Timekeeper | Hours | Rate | Fees |
|---|---|---|---|
| Douglas M. Werman | 35.48 | $700.00 | $24,838.33 |
| Michael L. Fradin | 59.50 | $500.00 | $29,750.00 |
| Michael Tresnowski | 9.67 | $400.00 | $3,868.00 |
| Cristina Calderon | 83.33 | $230.00 | $19,166.67 |
| Adriana Rodriguez | 0.17 | $175.00 | $29.17 |
| Vanessa Tecun | 6.33 | $150.00 | $950.00 |
| Maria Reyes | 1.49 | $150.00 | $224.00 |
| | | | **$78,826.17** |

*Id.* Counsel's requested fee is $68,333.33 and represents a ***13% reduction*** of their current

loadstar. Ex 2, Fradin Decl. ¶ 14. Courts from this district have approved multipliers in

other cases awarding a percentage of the fund, including similar wage and hour actions. *See,*

*e.g., Castillo*, 2015 WL 13021899, at *7 (Marbley, J.) (2.5 multiplier of counsel's lodestar);

*Swigart,* 2014 WL 3447947, at *6 (2.57 multiplier of counsel's lodestar).[5] And Plaintiff's

Counsel's lodestar does not take into consideration future time Plaintiff's Counsel will

spend fulfilling their obligations in the Settlement Agreement, administration of the

Settlement, and responding to Plaintiff's and Potential Opt-In Plaintiffs' inquiries. Ex 2,

Fradin Decl. ¶ 11.

### 5. *Complexity of the Litigation*

"Wage-and-hour collective and class actions are, by their very nature, complicated

and time-consuming." *Swigart,* 2014 WL 3447947, at *7 (citation omitted). The parties

faced complex motion practice, both over the merits, as well as on collective treatment.

---

[5]     *See also Johnson*, 2013 WL 2295880, at *6 (Marbley, J.) (2.25 multiplier of counsel's lodestar); *Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (3.06 multiplier).

### 6. *Professional Skill and Standing of Counsel*

Counsel are highly qualified and experienced and have substantial credentials in federal courts and class and collective action litigation. Ex. 3, Werman Decl. ¶ 6; Ex. 2, Fradin Decl. ¶ 6; *see also* n. 9, supra; *Sanchez*, 2017 WL 1425837, at *5-7; *Mouloki,* 2017 WL 2791215, at * 3, n. 4. Mr. Werman has extensive experience representing tipped employees in wage and hour litigation.[6]

For the foregoing reasons, Plaintiff's Counsel's requested attorneys' fees of $68,333.33 should be approved.

### B. **Plaintiff's Litigation Expenses Should Be Approved**

Through date, Plaintiff's Counsel's expenses are $400 Ex. 2, Fradin Decl. ¶ 15. The expenses are detailed by category in Counsel's Declarations, and invoices or receipts can be produced upon request. *Id.* The expenses incurred are reasonable and their reimbursement should be approved. *Swigart*, 2014 WL 3447947, at *7 (reimbursing $39,406.46 in out-of-pocket litigation expenses" that "were reasonable and necessary in connection with litigating and resolving this case and are reimbursable.").

---

[6]     See, e.g., *Driver v. AppleIllinois, LLC*, No. 06-cv-6149 (N.D. Ill.); *Schaefer v. Walker Bros. Enter. Inc.*; *Romero v. Top-Tier Colorado, LLC*, No. 16-1057 (10th Cir.); *Fast v. Applebee's Inter. Inc.*, Nos. 10–1725, 10–1726 (8th Cir.); *Cope v. Let's Eat Out, Inc.*, No. 6:16-cv-03050 (W.D. Mo.); *McLamb v. High 5 Hospitality*, No. 16-0039 GMS (D. Del.); *Greenwell v. R. Wings R. Wild, LLC*, No. 4:15-cv-00742-DPM (E.D. Ark.); *Barnhart v. Chesapeake Bay Seafood House Assoc., LLC*, No. JFM-16-01277 (D. Md.); *Stokes v. Consolidated Wings Investment, LLC*, No. 1:15-cv-01932-RLY-DKL (S.D. Ind.); *Roy v. JK&T Wings, Inc.*, No. 4:16-cv-10836-TSH (D. Mass.); *Knox v. The Jones Group*, No. 15-cv-1738 SEB-TAB (S.D. Ind.); *Ide v. Neighborhood Rest. Partners, LLC,* No. 1:13-cv-00509-MHC (N.D.Ga.); *Robbins v. Blazin Wings, Inc.*, No. 15-06340 (W.D.N.Y.); *Grosscup v. KPW Mgmt., Inc.*, No. 16-cv-6501 (N.D. Ill.); *Soto v. Wings R' Us Romeoville, Inc.*, No. 15-cv-10127 (N.D. Ill.); *Black v. P.F. Chang's China Bistro, Inc.*, No. 16-cv-3958 (N.D. Ill.); *Johnson v. Pinstripes, Inc.*, No. 12 C 1018 (N.D. Ill.); *Cureless v. Great Am. Real Food Fast, Inc.*, No. 3:10–cv–00279–JPG–SCW (S.D. Ill.); *Clark v. Honey Jam Café, LLC*, No. 11 C 3842 (N.D. Ill.); *Cooper v Winking Lizard, Inc.*, 1:16-cv-01513-DAP (N.D. Ohio).

21

## VIII.  THE COURT SHOULD APPOINT A SETTLEMENT ADMINISTRATOR AND APPROVE ITS FEE

The Court should appoint Analytics Consulting as the Settlement Administrator and approve $7,500 in Costs of Administration for its work in administering the settlement.

## IX.  CONCLUSION

For the foregoing reasons, the Court should approve the Settlement. Plaintiff respectfully requests the Court enter the Approval Order attached to the Settlement Agreement as Attachment A and dismiss the Civil Action with Prejudice, with such dismissal to take effect on the day that is 30 days after the close of the check cashing period.

Dated:  September 23, 2020

Respectfully submitted,

s/Michael L. Fradin
One of Plaintiff's Counsel

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was electronically filed and served on all parties of record via the Court's CM/ECF filing system on 9/23/2020.

s/Douglas M. Werman
One of Plaintiff's Counsel

22